IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-692-FL

MORAN D. MCCULLOUGH, )
 )
    Plaintiff/Claimant, )
 )
 ) **MEMORANDUM AND**
v. ) **RECOMMENDATION**
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
 )
    Defendant. )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-12, DE-14] pursuant to Fed. R. Civ. P. 12(c). Claimant Moran D. McCullough ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on August 3, 2010, alleging disability beginning September 30, 2009. (R. 239–42). His claim was denied initially and upon reconsideration. (R. 111–26). A hearing before an Administrative Law Judge ("ALJ") was held on June 6, 2012, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 64–110). On August 7, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 127–43). On November 26, 2013, the Appeals Council remanded the case for further consideration. (R. 144–47). On November 12, 2014, a second hearing before the same ALJ was held, at which Claimant was represented by counsel and a VE appeared and testified. (R. 34–63). On January 20, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–33). On June 2, 2016, the Appeals Council denied Claimant's request for review. (R. 1–5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded*

*by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

## IV. The ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ determined that Claimant was "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment through his date last insured of June 30, 2010. (R. 17). Next, the ALJ determined Claimant had the severe impairments of status post cerebrovascular accident (stroke) with residuals, chronic eczema/atopic dermatitis, and hypertension, and the non-severe impairments of obesity, adjustment disorder, and cognitive disorder. (R. 18–22). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22–23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. (R. 21–22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a light work[1] with a limitation to avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. (R. 23–27). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely persuasive. (R. 25–26). At step four, the ALJ concluded Claimant was capable of performing his past relevant work

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

as a life insurance agent. (R. 27).

Claimant alleges that the ALJ erred by failing to comply with the remand order of the Appeals Council to sufficiently consider how the evidence of memory deficits since Claimant's stroke affected his ability to perform skilled work. Pl.'s Mem. [DE-13] at 4–8.

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Memory Deficits

Claimant was admitted to the hospital on October 1, 2009 and diagnosed with ischemic cerebrovascular accident (stroke). (R. 352–53). Thereafter, he underwent therapy for resulting physical and mental impairments, including memory deficits, and was discharged from occupational therapy ("OT") in February 2010 (R. 696–97) and from speech therapy in April 2010 (R. 581). Claimant continued to see a psychotherapist intermittently throughout the relevant period and beyond. (R. 886–919, 983–1021). Claimant asserts that he continues to experience memory deficits and they preclude him from returning to his prior skilled work. Pl.'s Mem. [DE-13] at 4–8.

#### 1. Step Two–Severity

Claimant first contends the ALJ applied the wrong legal standard in concluding that his adjustment and cognitive disorders were not severe. *Id.* at 5–6. At step two the ALJ determined Claimant's mental impairments "did not cause more than minimal limitation in his ability to perform the basic mental demands of competitive, remunerative, *unskilled* work . . . ." (R. 19) (emphasis added). Claimant argues that he does not have to demonstrate his impairments render him unable to perform unskilled work but only that he is unable to perform skilled work, because a finding of disabled would be directed with a limitation to light unskilled work. Pl.'s Mem. [DE-13] at 5. Claimant also notes that the Appeals Council directed the ALJ to consider the effect of Claimant's

5

memory deficits on his ability to perform skilled work. *Id.*; (R. 145) (noting the ALJ's finding that Claimant could return to his past skilled work and concluding that "further consideration is necessary to determine whether the claimant can return to skilled or semi-skilled work during the period at issue given his deficits in memory."). The Commissioner counters that the ALJ properly applied the correct legal standard at step two and further considered all of Claimant's impairments in formulating the RFC. Def.'s Mem. [DE-15] at 10–16.

At step two the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "To be found disabled, an individual must have a medically determinable 'severe' physical or mental impairment or combination of impairments that meets the duration requirement." S.S.R. 96-3p, 1996 WL 374181, at *1 (July 2, 1996). An impairment is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." S.S.R. 96-3p, 1996 WL 374181, at *1; *see also* 20 C.F.R. § 404.1522 (defining non-severe impairments).

In the ALJ's discussion of Claimant's mental impairments at step two he expressly acknowledged the Appeals Council's directive to "give further consideration to the claimant's maximum residual functional capacity, particularly with respect to his ability to perform skilled or semi-skilled work." (R. 19, 145–46). The ALJ then expressed his finding that Claimant's mental impairments were "not severe within the ambit of the Regulations" because they "did not cause more than minimal limitation in his ability to perform the basic mental demands of competitive, remunerative, *unskilled* work . . . ." (R. 19) (emphasis added). Under the regulations, "basic work

activities" are "the abilities and aptitudes necessary to do most jobs" and examples include "[u]nderstanding, carrying out, and remembering simple instructions," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b). These mental abilities are also necessary to perform unskilled work. *See* S.S.R. 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) ("[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). The issue of whether Claimant's cognitive impairments prevent him from performing skilled work is addressed at step four in determining whether the Claimant's past relevant work is precluded by the RFC as determined by the ALJ. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); 404.1560(b). Accordingly, the ALJ's determination at step two that Claimant's mental impairments "did not cause more than minimal limitation in his ability to perform the basic mental demands of competitive, remunerative, unskilled work" (R. 19) was consistent with the regulations and did not contravene the Appeals Council's remand order.

2. **The RFC Determination**

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and

7

other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

When assessing a claimant's RFC, the ALJ must also consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

### i. Treatment Notes Regarding Memory Deficits

Claimant contends the ALJ failed to consider and assign weight to a March 2010

neuropsychological evaluation, found within a speech therapy treatment note,[2] indicating he "completed short term memory tasks with 57% accuracy for recall of complex design" (R. 577), which the Appeals Council specifically cited in the remand order (R. 145), as well as earlier treatment notes from October to December 2009 indicating deficits in divided attention and memory (R. 599, 605, 645, 647). Pl.'s Mem. [DE-13] at 6. The ALJ did not expressly discuss each particular piece of evidence in the decision, but he was not required to. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ did thoroughly consider the course of Claimant's occupational and speech therapy at step two and referenced it again in the RFC analysis. (R. 18–21, 25); *see Harley v. Colvin*, No. 5:14-CV-853-D, 2015 WL 9699531, at *10 (E.D.N.C. Dec. 2, 2015) (concluding the relevance of findings in the ALJ's decision was not negated because they appeared at a different step of the sequential evaluation where "the ALJ's decision must be read as a whole") (citation omitted), *adopted by*, 2016 WL 126372 (Jan. 11, 2016).

In the RFC analysis, the ALJ recounted Claimant's testimony from the first and second administrative hearing regarding his ability to focus for only about two hours before needing to rest and that he experiences confusion, speech difficulty, and difficulty with concentration, focus, and memory. (R. 24). The ALJ did not ignore evidence of Claimant's memory deficits and discussed several treatment notes indicating that Claimant continued to experience some memory and other cognitive deficits in late 2009 and early 2010. (R. 18–21, 605–06, 696, 905, 907). The ALJ also cited subsequent records indicating Claimant was discharged from OT in February 2010, only received a few sessions of speech therapy after that time and prior to his date last insured, "missed

---

[2] The treatment records indicate that Claimant addressed his memory problems through speech therapy. *See* (R. 605) (Nov. 3, 2009 treatment note indicating Claimant was still having some difficulty with is memory and was working on his cognition in outpatient speech therapy).

9

many appointments, especially with his speech therapist, which suggests that some of his symptoms may not have been as serious as has been alleged," and was discharged from speech therapy in April 2010 due to "chronic no-shows/cancellations." (R. 18, 25, 572–76, 582–85, 696). The ALJ further cited Claimant's report to Dr. Ackley in May 2010 that he had returned to work, was doing well at work and enjoying himself, but was laid off the week prior due to budget cuts.[3] (R. 20, 26, 897). The ALJ's discussion reflects that beginning in May 2010, Dr. Ackley noted no diagnosis of cognitive difficulties, the treatment notes do not reflect any complaints related thereto, and Claimant went months at a time without seeking psychotherapy treatment. (R. 20, 887–97, 912–19). The ALJ also found that Claimant had the ability to understand, remember, and carry out complex or abstract directions and to express complex ideas with only mild difficulty. (R. 22); *see* 20 C.F.R. § 404.1568(c) ("[S]killed jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.").

The ALJ's decision sufficiently addressed the issues raised by the March 2010 and prior treatment notes related to Claimant's memory deficits. The ALJ's decision reflects that Claimant's memory had improved and he sought no treatment and made no complaints related to his memory deficits after the March 2010 speech therapy visit. (R. 18–21, 25). This constitutes substantial evidence for imposing no limitation in the RFC related to Claimant's memory deficits. *See Bailes v. Berryhill*, No. 1:15-CV-00171-RLV, 2017 WL 2569741, at *8 (W.D.N.C. June 12, 2017) (concluding the ALJ's finding that the claimant's failure to seek treatment was an indication the claimant did not believe her symptoms significantly restricted her was substantial evidence for the

---

[3] Claimant last worked prior to his stroke as a data collector (civilian military contractor) testing equipment for the military and prior to that he sold life insurance. (R. 39–42). The VE classified all of Claimant's past relevant work as "skilled." (R. 56–58).

10

ALJ's decision not to include any restrictions for mental functioning). While the ALJ might have been clearer in his explanation, the reasoning is evident from the decision, which is supported by substantial evidence. *See Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015) ("[T]he fact that the ALJ could have offered a more thorough explanation for his decision does not change our conclusion that substantial evidence in the record supports that decision."). Thus, the ALJ's failure to explicitly discuss the March 2010 and prior treatment notes provides no basis for remand.

### ii. Opinion Evidence

Claimant also challenges the weight assigned to the February 2010 opinion that upon discharge from OT Claimant continued to suffer from mild to moderate deficits in attention and concentration. Pl.'s Mem. [DE-13] at 6–7. Claimant attributes this opinion to Samuel Hardrick, an OT student under the supervision of an occupational therapist. *Id.* However, Mr. Hardrick did not treat Claimant on February 2010, and the treatment note indicates that Rhonda Sweitzer, an occupational therapist, evaluated Claimant at that time. (R. 696–97). The ALJ was in fact weighing the earlier opinion of Mr. Hardrick from October 6, 2009, at Claimant's initial OT evaluation, that he was "impulsive and could follow only 2-step directions." (R. 21) (internal citation omitted). The ALJ gave this opinion little weight because it "concerned the claimant's immediate and temporary condition," i.e., reflected Claimant's condition at the beginning of his treatment. *Id.* The ALJ then cited the February 2010 treatment note as evidence that Claimant's condition "had improved to the point where he met all of his occupational therapy goals, except that he still demonstrated mild-to-moderate deficits in maintaining attention and concentration while multitasking" and that he was discharged from OT. *Id.* Furthermore, the evidence indicates that at Claimant's March 2010 speech therapy appointment Claimant's ability to complete "sustained/divided attention tasks" was

11

evaluated at the request of OT to determine his performance, and Claimant completed the tasks with 80–85% accuracy (with a goal of 90% accuracy) (R. 577), demonstrating Claimant's condition continued to improve after he was discharged from OT. Thus, the ALJ's treatment of Mr. Hardrick's October 2009 opinion or the February 2010 opinion provides no basis for remand.

Finally, Claimant takes issue with the ALJ's mention of Claimant's discussions with Dr. Ackley regarding the possibly of returning to work without including Dr. Ackley's advice that Claimant consider stress level and time constraints due to his continuing treatment when thinking about taking on particular responsibilities at work. Pl.'s Mem. [DE-13] at 7–8; (R. 26, 900, 902). Claimant contends these limitations should have been included in the RFC. Pl.'s Mem. [DE-13] at 7–8. Claimant's argument overlooks the fact that Claimant actually did return to work and reported to Dr. Ackley on May 7, 2010 that "he was doing well at work and enjoying himself, but there were budget cuts and he was laid off" the week prior. (R. 897). Based on Claimant's own statement that he had started working again and was doing well at work, the ALJ was justified in not including limitations based on Dr. Ackley's concerns about problems that did not materialize when Claimant did in fact return to work. *See McNeill v. Colvin*, No. 5:13-CV-80-D, 2014 WL 4062502, at *9 (E.D.N.C. July 14, 2014) (finding the ALJ did not err in the RFC determination where the decision not to include the additional limitations identified by claimant's physicians was supported by substantial evidence), *adopted by*, 2014 WL 4062648 (Aug. 14, 2014).

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-12] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-14] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 14, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the _31_ day of July, 2017.

                                              Robert B. Jones, Jr.
                                              United States Magistrate Judge